**EXHIBIT C**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### (MARSHALL DIVISION)

| | | |
|---|---|---|
| **CELLULAR COMMUNICATIONS EQUIPMENT LLC,** | § § § | |
| **Plaintiff,** | § § | **C.A. No. 2:20-cv-00080** |
| **v.** | § § | **JURY TRIAL DEMANDED** |
| **TCL CORPORATION,** | § § | |
| **TCL COMMUNICATION TECHNOLOGY HOLDINGS LIMITED,** | § § § | |
| **HUIZHOU TCL MOBILE COMMUNICATION CO. LTD.,** | § § § | |
| **TCT MOBILE INTERNATIONAL LTD,** | § § | |
| **AND** | § § | |
| **TCL ELECTRONICS HOLDINGS LIMITED,** | § § § | |
| **Defendants.** | § § | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Cellular Communications Equipment LLC ("CCE" or "Plaintiff") files this First Amended Complaint against Defendants TCL Corporation ("TCL Corp."), TCL Communication Technology Holdings Limited ("TCL Communication"), Huizhou TCL Mobile Communication Co. Ltd. ("Huizhou TCL"), TCT Mobile International Ltd. ("TCT Mobile Int'l"), and TCL Electronics Holdings Limited ("TCL Electronics") (collectively "TCL" or "Defendants") for infringement of U.S. Patent No. 7,218,923 ("the '923 patent" or "the patent-in-suit").

## THE PARTIES

1.      CCE is a Texas limited liability company with its principal place of business in Plano, Texas.

2.      On information and belief, TCL Corp. is a corporation organized under the laws of the People's Republic of China, with its principal place of business located at No. 26, the Third Road, Zhongkai Avenue, Huizhou City, Guangdong, P.R. China 516006. TCL Corp. does business in the State of Texas and in the Eastern District of Texas.

3.      On information and belief, TCL Communication is a limited liability company organized in the Cayman Islands with a registered address at P.O. Box 2681, Cricket Square, Hutchins Drive, George Town, Grand Cayman and with its principal place of business located at Block F4, TCL Communication Technology Building, TCL International E City, Zhong Shan Yuan Road, Nanshan District, Shenzhen, Guangdong, P.R. China, 518052. TCL Communication does business in the State of Texas and in the Eastern District of Texas.

4.      On information and belief, Huizhou TCL is a limited liability company organized in the People's Republic of China, with its principal place of business located at No. 86 Hechang 7th West Road Zhongkai High-Technology Development Zone, Huizhou, Guangdong, 516006, China. Huizhou TCL does business in the State of Texas and in the Eastern District of Texas.

5.      On information and belief, TCT Mobile Int'l is a limited liability company organized in Hong Kong, with its principal place of business located at TCT MOBILE INTERNATIONAL LIMITED, 5/F BUILDING 22E HONG KONG SCIENCE PARK, 22 SCIENCE PARK EAST AVE, Sha Tin Hong Kong. TCT Mobile Int'l does business in the State of Texas and in the Eastern District of Texas.

6. On information and belief, TCL Electronics is a limited liability company incorporated in the Cayman Islands. The registered address of the Company is P.O. Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. The principal place of business of the Company is located at 7th Floor, Building 22E, 22 Science Park East Avenue, Hong Kong Science Park, Shatin, New Territories, Hong Kong. *See* TCL Electronics Holdings Limited Annual Report 2018 (*available at* http://electronics.tcl.com/UserFiles/File/IR/Annual%20Report/2018%20AR-E.pdf) at p. 135. TCL Electronics does business in the State of Texas and in the Eastern District of Texas.

7. On information and belief, TCL Corp. was founded in 1981 and is "one of China's largest business groups of consumer electronics operating in a global scale." *See* About TCL Page (*available at* http://electronics.tcl.com/en/aboutus/main.do?method=listing&mappingName=AboutUs_CompanyProfile). TCL Corp. owns at least three other companies: TCL Electronics (publicly listed as 01070.HK and co-defendant in this action), China Display Optoelectronics (publicly listed as 00334.HK) and Tonly Electronics (publicly listed 01249.HK). *Id*.

8. On information and belief, TCL Corp. holds a controlling interest in TCL Electronics, TCL Communication, Huizhou TCL, and TCT Mobile Int'l. *See* TCL Electronics Holdings Limited Annual Report 2018, at p. 113 (stating that TCL Corp. is the "ultimate controlling shareholder of the Company"). In May of 2018, TCL Electronics changed its name from "TCL Multimedia Technology Holdings Limited" to "TCL Electronics Holdings Limited." *Id*. *See* TCL Electronics Holdings Limited Annual Report 2018, at p. 8.

9. On information and belief, TCL Communication was founded in 1999. TCL Communication is "a global terminal manufacturer." About TCL Communication Page (*available*

*at* http://tclcom.tcl.com/?page=company_profile). TCL Communication "provides globally its rich portfolio of product and service under three key brands – TCL, Alcatel and BlackBerry." *Id.* "TCL Communication ranked no. 7 among global handset manufacturers, tablet business ranked no. 7 among all tablet manufacturers." *Id.* TCL Communication's products are "currently sold in over 160 countries throughout North America, Latin America, Europe, the Middle East, Africa, Asia Pacific and China. The company has built a solid partnership with the global mainstream operators such as VODAFONE, ORANGE and retail giants like WALMART, BESTBUY, Amazon, etc." *Id.* TCL Communication owns research and development centers in the United States and touts a "powerful, efficient, global supply chain system." *Id.*

10.     On information and belief, both Huizhou TCL and TCT Mobile Int'l are wholly-owned subsidiaries of TCL Communication. *See* TCL Communication 2016 Annual Report (*available at* http://www.tclcom.com/admin/documents/freport/1495536897_e_TCL%20COMM%202016AR.pdf). TCL Communication and its subsidiaries—including Huizhou TCL and TCT Mobile Int'l—are part of a related "Group" of companies under the umbrella of TCL Corp. The Group also includes TCL Electronics and its subsidiaries. The Group brands itself as the "world's leading consumer electronics company" that "is engaged in the research and development, manufacturing and sale of consumer electronics products," which "are sold all over the world." *See* TCL Electronics Holdings Limited Annual Report 2018, at p. 7.  The Group "designs, manufactures and markets an expanding portfolio of mobile devices and other products worldwide under three key brands — Alcatel, TCL and BlackBerry." *Id.* at p. 2. These devices are sold "throughout North America," including in the State of Texas and the Eastern District of Texas." *Id.*

11.     On information and belief, the members of the Group have operated as agents of one another and vicariously as two arms of the same business group to work in concert together and enter into agreements that are nearer than arm's length to conduct business in the United States, including in Texas and this judicial district. *See Trois v. Apple Tree Auction Center, Incorporated*, 882 F.3d 485, 490 (C.A.5 (Tex.), 2018) ("A defendant may be subject to personal jurisdiction because of the activities of its agent within the forum state…."); *see also Cephalon, Inc. v. Watson Pharmaceuticals, Inc.*, 629 F.Supp.2d 338, 348 (D. Del. 2009) ("The agency theory may be applied not only to parents and subsidiaries, but also to companies that are 'two arms of the same business group,' operate in concert with each other, and enter into agreements with each other that are nearer than arm's length.").

12.     On information and belief, as part of the Group, Huizhou TCL's "principal activities" include the "[m]anufacture and distribution of mobile devices and rendering of services." *Id*. at p. 57. TCT Mobile Int'l operates as part for the Group for the "[d]evelopment and distribution of mobile devices and related components." *Id*.

13.     On information and belief, Defendants engaged in a concerted effort to sell, offer to sell, and import infringing products. For example in 2018, TCL Electronics carried out a series of "connected transactions" with TCL Corp. in furtherance of its mutual business interests and goals, including, but not limited to, 1) renewing its "Master TCL Trademark License," which was exclusive and royalty-free, to use the TCL trademark for "the manufacture, production, sale and distribution of electronic products including televisions, audio-visual products and commercial use display products;" 2) entering into a "Master Sale and Purchase (2017) Agreement" for the purchase of "goods produced or manufactured in the PRC from TCL Group amounting to HK\$12,892,395,000; and… sold goods to TCL Group;" and 3) entering into a "Master Sourcing

(2017 Renewal) Agreement" wherein the Group "sold overseas materials to TCL Group amounting to HK\$1,049,403,000; and … purchased overseas materials from TCL Group amounting to HK\$840,166,000 during the year amounting to HK\$5,566,381,000 during the year." *See* TCL Electronics Holdings Limited Annual Report 2018, at pp. 109-113.

## JURISDICTION AND VENUE

14.      This action arises under the patent laws of the United States, namely 35 U.S.C. §§ 271, 281, and 284-285, among others.

15.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

16.      On information and belief, TCL Corp. is subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due at least to its substantial business in this State and judicial district, including: (A) at least part of its own infringing activities alleged herein; and (B) regularly doing or soliciting business, engaging in other persistent conduct, and/or deriving substantial revenue from infringing goods offered for sale, sold, and imported and services provided to Texas residents vicariously through and/or in concert with its subsidiaries, intermediaries, and/or agents.

17.      This Court has personal jurisdiction over TCL Corp., directly or through intermediaries, such as TCL Communication, Huizhou TCL, TCT Mobile Int'l, TCL Communication's wholly-owned U.S.-based subsidiary TCT Mobile (US) Inc. ("TCT Mobile (US)"), TCL Electronics and TCL Electronics' wholly-owned U.S.-based subsidiary TTE Technology Inc. ("TTE"), because TCL Corp. has committed acts of direct and/or indirect patent infringement within Texas, and elsewhere within the United States giving rise to this action and/or has established minimum contacts with Texas such that personal jurisdiction over TCL Corp. would not offend traditional notions of fair play and substantial justice. For example, on

information and belief, TCL Corp. has placed and continues to place into the stream of commerce using established distribution channels infringing products with the knowledge and understanding that such products are, will be, and continue to be sold, offered for sale, and/or imported into this judicial district and the State of Texas. For example, TCL Corp. touts that it has "employees through Asia, the Americas, Europe and Oceania" and has a "Sales Network" that spans "Regional Business Centers" in North America, including the United States. TCL products, including for example TCL Plex, TCL 10 Pro, TCL 10 L, and TCL 5G, are or have been widely sold in retail stores, both brick and mortar and online, within this judicial district and in Texas. *See Litecubes, LLC v. Northern Light Products, Inc.*, 523 F.3d 1353, 1369-70 (Fed. Cir. 2008) ("[T]he sale [for purposes of § 271] occurred at the location of the buyer."); *see also Semcon IP Inc. v. Kyocera Corporation*, No. 2:18-cv-00197-JRG, 2019 WL 1979930, at *3 (E.D. Tex. May 3, 2019) (denying accused infringer's motion to dismiss because plaintiff sufficiently plead that purchases of infringing products outside of the United States for importation into and sales to end users in the U.S. may constitute an offer to sell under § 271(a)).

18.     On information and belief, TCL Corp. controls its subsidiaries and intermediaries, including, but not limited to, TCL Communication, Huizhou TCL, TCT Mobile Int'l, TCT Mobile (US), TCL Electronics and TTE. These subsidiaries give TCL Corp. substantially the business advantages that it would have enjoyed if it conducted its business through its own offices or paid agents in the state of Texas.

19.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because, among other things, TCL Corp. is not a resident in the United States, and thus may be sued in any judicial district, including this one, pursuant to 28 U.S.C. § 1391(c)(3). *See also In re HTC*

*Corporation*, 889 F.3d 1349, 1357 (Fed. Cir. 2018) ("The Court's recent decision in *TC Heartland* does not alter" the alien-venue rule.).

20.     On information and belief, TCL Communication is subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due at least to its substantial business in this State and judicial district, including: (A) at least part of its own infringing activities alleged herein; and (B) regularly doing or soliciting business, engaging in other persistent conduct, and/or deriving substantial revenue from infringing goods offered for sale, sold, and imported and services provided to Texas residents vicariously through and/or in concert with its subsidiaries, intermediaries, and/or agents.

21.     This Court has personal jurisdiction over TCL Communication, directly or through intermediaries, such as TCT Mobile (US), because TCL Communication has committed acts of direct and/or indirect patent infringement within Texas, and elsewhere within the United States giving rise to this action and/or has established minimum contacts with Texas such that personal jurisdiction over TCL Communication would not offend traditional notions of fair play and substantial justice. For example, on information and belief, TCL Communication has placed and continues to place into the stream of commerce using established distribution channels infringing products with the knowledge and understanding that such products are, will be, and continue to be sold, offered for sale, and/or imported into this judicial district and the State of Texas. For example, TCL Communication touts that it has "12,000 employees worldwide" and sell products "throughout North America," including the United States. About TCL Communication Page. TCL's products are generally "mobile devices," including for example the TCL Plex, TCL 10 Pro, TCL 10 L, and TCL 5G, which are or have been widely sold in retail stores, both brick and mortar and online, within this judicial district and in Texas, including for example by "mainstream

operators such as VODAFONE, ORANGE and retail giants like WALMART, BESTBUY, Amazon, etc." *Id.* Additionally, TCL Communications and its subsidiaries—including Huizhou TCL and TCT Mobile Int'l—have "firm commitments" for future sales in the Americas, including the United States. *See* TCL Communication 2017 Audited Financial Statement at p. 63 (*available at* http://www.tclcom.com/admin/documents/freport/ANNUAL%20REPORT%202017.pdf). *See also Litecubes, LLC v. Northern Light Products, Inc.*, 523 F.3d 1353, 1369-70 (Fed. Cir. 2008) ("[T]he sale [for purposes of § 271] occurred at the location of the buyer."); *see also Semcon IP Inc. v. Kyocera Corporation*, No. 2:18-cv-00197-JRG, 2019 WL 1979930, at *3 (E.D. Tex. May 3, 2019) (denying accused infringer's motion to dismiss because plaintiff sufficiently plead that purchases of infringing products outside of the United States for importation into and sales to end users in the U.S. may constitute an offer to sell under § 271(a)).

22.     On information and belief, TCL Communication controls its subsidiaries and intermediaries, including, but not limited to, Huizhou TCL, TCT Mobile Int'l, and TCT Mobile (US). These subsidiaries give TCL Communication substantially the business advantages that it would have enjoyed if it conducted its business through its own offices or paid agents in the state of Texas.

23.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because, among other things, TCL Communication is not a resident in the United States, and thus may be sued in any judicial district, including this one, pursuant to 28 U.S.C. § 1391(c)(3). *See also In re HTC Corporation*, 889 F.3d 1349, 1357 (Fed. Cir. 2018) ("The Court's recent decision in *TC Heartland* does not alter" the alien-venue rule.).

24.     On information and belief, Huizhou TCL is subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due at

least to its substantial business in this State and judicial district, including: (A) at least part of its own infringing activities alleged herein; and (B) regularly doing or soliciting business, engaging in other persistent conduct, and/or deriving substantial revenue from infringing goods offered for sale, sold, and imported and services provided to Texas residents vicariously through and/or in concert with its subsidiaries, intermediaries, and/or agents.

25.     This Court has personal jurisdiction over Huizhou TCL, directly or through intermediaries and other members of the Group, including, but not limited to, TCT Mobile (US) Inc., because Huizhou TCL has committed acts of direct and/or indirect patent infringement within Texas, and elsewhere within the United States giving rise to this action and/or has established minimum contacts with Texas such that personal jurisdiction over Huizhou TCL would not offend traditional notions of fair play and substantial justice. For example, on information and belief, Huizhou TCL has placed and continues to place into the stream of commerce using established distribution channels infringing products with the knowledge and understanding that such products are, will be, and continue to be sold, offered for sale, and/or imported into this judicial district and the State of Texas. For example, Huizhou TCL operates within the Group to "[m]anufacture and distribut[e] mobile devices and rendering of services." TCL Communications Annual Report 2016 at p. 57. The Group sells these devices and renders services in "over 160 countries" including "throughout North America," including the U.S. *Id.* at p. 2. TCL's products are generally "mobile devices," including for example the TCL Plex, TCL 10 Pro, TCL 10 L, and TCL 5G, which are or have been widely sold in retail stores, both brick and mortar and online, within this judicial district and in Texas, including for example by "mainstream operators such as VODAFONE, ORANGE and retail giants like WALMART, BESTBUY, Amazon, etc." *Id.* Additionally, TCL Communications and its subsidiaries—including Huizhou TCL and TCT Mobile Int'l—have "firm

commitments" for future sales in the Americas," including the United States. *See* TCL Communication 2017 Audited Financial Statement at p. 63 (*available at* http://www.tclcom.com/admin/documents/freport/ANNUAL%20REPORT%202017.pdf). *See also Litecubes, LLC v. Northern Light Products, Inc.*, 523 F.3d 1353, 1369-70 (Fed. Cir. 2008) ("[T]he sale [for purposes of § 271] occurred at the location of the buyer."); *see also Semcon IP Inc. v. Kyocera Corporation*, No. 2:18-cv-00197-JRG, 2019 WL 1979930, at *3 (E.D. Tex. May 3, 2019) (denying accused infringer's motion to dismiss because plaintiff sufficiently plead that purchases of infringing products outside of the United States for importation into and sales to end users in the U.S. may constitute an offer to sell under § 271(a)).

26.     On information and belief, Huizhou TCL controls its affiliates, subsidiaries and intermediaries, including, but not limited to, TCT Mobile (US) Inc. These subsidiaries and intermediaries give Huizhou TCL substantially the business advantages that it would have enjoyed if it conducted its business through its own offices or paid agents in the state of Texas.

27.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because, among other things, Huizhou TCL is not a resident in the United States, and thus may be sued in any judicial district, including this one, pursuant to 28 U.S.C. § 1391(c)(3). *See also In re HTC Corporation*, 889 F.3d 1349, 1357 (Fed. Cir. 2018) ("The Court's recent decision in *TC Heartland* does not alter" the alien-venue rule.).

28.     On information and belief, TCT Mobile Int'l is subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due at least to its substantial business in this State and judicial district, including: (A) at least part of its own infringing activities alleged herein; and (B) regularly doing or soliciting business, engaging in other persistent conduct, and/or deriving substantial revenue from infringing goods offered for

sale, sold, and imported and services provided to Texas residents vicariously through and/or in concert with its subsidiaries, intermediaries, and/or agents.

29.     This Court has personal jurisdiction over TCT Mobile Int'l, directly or through intermediaries and other members of the Group, including TCT Mobile (US) Inc., because TCT Mobile Int'l has committed acts of direct and/or indirect patent infringement within Texas, and elsewhere within the United States giving rise to this action and/or has established minimum contacts with Texas such that personal jurisdiction over TCT Mobile Int'l would not offend traditional notions of fair play and substantial justice. For example, on information and belief, TCT Mobile Int'l has placed and continues to place into the stream of commerce using established distribution channels infringing products with the knowledge and understanding that such products are, will be, and continue to be sold, offered for sale, and/or imported into this judicial district and the State of Texas. For example, TCT Mobile Int'l operates within the Group for the "[d]evelop[ment] and distribution of mobile devices and related components," including within the United States. TCL Communications Annual Report 2016 at p. 57. The Group sells these devices and renders services in "over 160 countries" including "throughout North America," including the U.S. *Id*. at p. 2. *See also* https://panjiva.com/Tct-Mobile/40021459 (further showing TCT Mobile Int'l important of devices into the U.S.).   TCL's products are generally "mobile devices," including for example the TCL Plex, TCL 10 Pro, TCL 10 L, and TCL 5G, which are or have been widely sold in retail stores, both brick and mortar and online, within this judicial district and in Texas, including for example by "mainstream operators such as VODAFONE, ORANGE and retail giants like WALMART, BESTBUY, Amazon, etc." *Id.* Additionally, the Group, including TCT Mobile Int'l, has "firm commitments" for future sales in the Americas," including the United States. *See* TCL Communication 2017 Audited Financial Statement at p. 63 (*available*

*at* http://www.tclcom.com/admin/documents/freport/ANNUAL%20REPORT%202017.pdf). *See also Litecubes, LLC v. Northern Light Products, Inc.*, 523 F.3d 1353, 1369-70 (Fed. Cir. 2008) ("[T]he sale [for purposes of § 271] occurred at the location of the buyer."); *see also Semcon IP Inc. v. Kyocera Corporation*, No. 2:18-cv-00197-JRG, 2019 WL 1979930, at *3 (E.D. Tex. May 3, 2019) (denying accused infringer's motion to dismiss because plaintiff sufficiently plead that purchases of infringing products outside of the United States for importation into and sales to end users in the U.S. may constitute an offer to sell under § 271(a)).

30.     On information and belief, TCT Mobile Int'l controls its affiliates, subsidiaries and intermediaries, including, but not limited to, TCT Mobile (US) Inc. These subsidiaries and intermediaries give TCT Mobile Int'l. substantially the business advantages that it would have enjoyed if it conducted its business through its own offices or paid agents in the state of Texas.

31.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because, among other things, TCT Mobile Int'l is not a resident in the United States, and thus may be sued in any judicial district, including this one, pursuant to 28 U.S.C. § 1391(c)(3). *See also In re HTC Corporation*, 889 F.3d 1349, 1357 (Fed. Cir. 2018) ("The Court's recent decision in *TC Heartland* does not alter" the alien-venue rule.).

32.     On information and belief, TCL Electronics is also subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due at least to its substantial business in this State and judicial district, including: (A) at least part of its own infringing activities alleged herein; and (B) regularly doing or soliciting business, engaging in other persistent conduct, and/or deriving substantial revenue from infringing goods offered for sale, sold, and imported and services provided to Texas residents vicariously through and/or in concert with its subsidiaries, intermediaries, and/or agents.

33.     This Court has personal jurisdiction over TCL Electronics, directly or through intermediaries and subsidiaries including, but not limited to, its U.S.-based subsidiary TTE, because TCL Electronics has committed acts within Texas giving rise to this action and/or has established minimum contacts with Texas such that personal jurisdiction over TCL would not offend traditional notions of fair play and substantial justice. For example, on information and belief, TCL Electronics has placed and continues to place into the stream of commerce using established distribution channels infringing products with the knowledge and understanding that such products are, will be, and continue to be sold, offered for sale, and/or imported into this judicial district and the State of Texas. On information and belief, TTE is "an entity…directly or indirectly, controlled by" TCL Electronics, as well as other subsidiaries. *See* TCL Electronics Holdings Limited Annual Report 2018, at p. 139. According to TCL Electronics, such control over TTE means that the "Group is exposed, or has rights, to variable returns from its involvement with the investee and has the ability to affect those returns through its power over the investee (i.e. existing rights that give the Group the current ability to direct the relevant activities of the investee)." *Id*. The business TTE, among other subsidiaries or intermediaries, conducts in the U.S. gives TCL Electronics substantially the business advantages that it would have enjoyed if it conducted its business through its own offices or paid agents in this judicial district and in the state of Texas.

34.     On information and belief, TCL Electronics has placed and continues to place infringing mobile devices into the stream of commerce via an established distribution channel with the knowledge and/or intent that those products were sold and continue to be sold in the United States and Texas, including in this judicial district.

35.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because, among other things, TCL Electronics is not a resident in the United States, and thus may be sued in any judicial district, including this one, pursuant to 28 U.S.C. § 1391(c)(3).

36.     On information and belief, TCL has significant ties to, and presence in, the State of Texas and the Eastern District of Texas, making venue in this judicial district both proper and convenient for this action.

## THE PATENT-IN-SUIT

37.     The '923 patent is titled "Control of Terminal Applications in a Network Environment." The inventions claimed in the patent-in-suit generally relate to a new and novel approach to controlling the permissions of applications operating on a mobile device. And more particularly, the inventions relate to controlling the messaging permissions of such applications.

38.     The '923 patent lawfully issued on May 15, 2007.

39.     The named inventors on the patent-in-suit are Auvo Hartikainen, Kari Silfverberg, Markku Kontio, Kari Miettinen, Isaac De La Pena, Elina Aho, Arto Tiihonen, Arto Pussinen, and Juha P. Hartikainen.

40.     Each asserted claim in the patent-in-suit is presumed valid.

41.     Each asserted claim in the patent-in-suit is directed to patent eligible subject matter under 35 U.S.C. § 101.

42.     The specification of the patent-in-suit discloses shortcomings in the prior art and then explains, in detail, the technical way the inventions claimed in the patent-in-suit resolve or overcome those shortcomings. As the patent-in-suit explains, there is a desire for mobile devices to "provide an open development platform for application developers." '923 Patent, 1:32-33. While this open development platform offers tremendous benefits, it also opens the door to "the possibility of fraudulent applications." *Id.* at 1:38-39. Left unchecked, this could allow for

malicious applications to behave contrary to the agreements made with the network operator or send premium SMS messages at the user's expense. *See id.* at 1:43-47. The '923 Patent recognized this drawback and introduced a solution to allow the mobile device to eliminate the possibility of misuse by a malicious application. *Id.* at 1:53-58.

## COUNT I
### (Infringement of U.S. Patent No. 7,218,923)

43.     Plaintiff incorporates paragraphs 1 through 42 herein by reference.

44.     This cause of action arises under the patent laws of the United States, and in particular, 35 U.S.C. §§ 271, *et seq.*

45.     Plaintiff is the owner of the '923 patent with all substantial rights to the '923 patent including the exclusive right to enforce, sue, and recover damages for past and future infringement.

46.     The '923 patent is valid, enforceable and was duly issued in fully compliance with Title 35 of the United States Code.

### DIRECT INFRINGEMENT (35 U.S.C. §271(a))

47.     Defendants have, and continue to, infringe one or more claims of the '923 patent in this judicial district and elsewhere in Texas and the United States.

48.     On information and belief, Defendants have, and continue to, either by themselves or via an agent, infringe at least claim 1 of the '923 patent by, among other things, practicing the method of claim 1 via at least its testing of the native Messaging application in its Android phones ("the Accused Products").

49.     Attached hereto as Exhibit A, and incorporated herein by reference, is a claim chart detailing how the Accused Products infringe the '923 patent.

50.     Defendants are liable for these infringements of the '923 patent pursuant to 35 U.S.C. § 271.

## INDIRECT INFRINGEMENT (INDUCEMENT - 35 U.S.C. §271(b))

51.     Based on the information presently available to Plaintiff, absent discovery, and in the alternative to direct infringement, Plaintiff contends that Defendants have, and continue to, indirectly infringe one or more claims of the '923 patent by inducing direct infringement by end users of the Accused Products.

52.     Defendants have had knowledge of the '923 patent since at least the service of this Complaint.

53.     On information and belief, despite having knowledge of the '923 patent, Defendants have specifically intended for persons who acquire and use the Accused Products, including Defendants' customers and end consumers, to acquire and/or use such devices in a way that infringes the '923 patent, including at least claim 1, and Defendants knew or should have known that their actions were inducing infringement.

54.     Defendants instruct and encourage users to use the Accused Products in a manner that infringes the '923 patent. For example, Defendants' user guides for its phones provide end users detailed instructions on how to use the Android Messaging app in the Accused Products. In addition, other publications from Defendants, such as their website, may include support articles with detailed instructions on how to use the Android Messaging app in the Accused Products.

55.     Furthermore, Defendants have not provided any information or indication that they have implemented a design around or otherwise taken any remedial action with respect to the '923 patent. In accordance with Fed. R. Civ. P. 11(b)(3), Plaintiff will likely have additional evidentiary support after a reasonable opportunity for discovery on this issue.

56.     Plaintiff has been damaged as a result of Defendants' infringing conduct described in this Count. Defendants are, thus, liable to Plaintiff in an amount that adequately compensates

Plaintiff for Defendants' infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## JURY DEMAND

Plaintiff requests a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## PRAYER FOR RELIEF

Plaintiff asks that the Court find in its favor and against Defendants and that the Court grant Plaintiff the following relief:

a.    Judgment that one or more claims of the '923 patent have been infringed, either literally and/or under the doctrine of equivalents, by Defendants;

b.    Judgment that one or more claims of the '923 patent have been willfully infringed, either literally and/or under the doctrine of equivalents, by Defendants;

c.    Judgment that Defendants account for and pay to Plaintiff all damages and costs incurred by Plaintiff because of Defendants' infringing activities and other conduct complained of herein, including an accounting for any sales or damages not presented at trial;

d.    Judgment that Defendants account for and pay to Plaintiff a reasonable, ongoing, post judgment royalty because of Defendants' infringing activities, including continuing infringing activities, and other conduct complained of herein;

e.    That Plaintiff be granted pre-judgment and post judgment interest on the damages caused by Defendants' infringing activities and other conduct complained of herein;

f.    Find this case exceptional under the provisions of 35 U.S.C. § 285 and award enhanced damages;

g.    Plaintiff seeks preliminary and permanent injunctions as a result of Defendants' infringement of the '923 patent. Plaintiff is likely to succeed in showing that Defendants infringe the '923 patent. Because of that infringement, Plaintiff has suffered an irreparable injury, and the remedies available at law, such as monetary damages, are inadequate to compensate for that injury. For example, if Plaintiff must enforce a judgment against Defendants in China, Plaintiff will face a historically challenging burden in persuading a Chinese court to enforce a judgment from a U.S. court, likely preventing Plaintiff from obtaining any

monetary damages from Defendants. Considering the balance of hardships between the Plaintiff and Defendants, a remedy in equity is warranted; and the public interest would not be disserved by a permanent or preliminary injunction; and

h.     That Plaintiff be granted such other and further relief as the Court may deem just and proper under the circumstances.

Dated: March 16, 2020                              Respectfully submitted,

                                                    By: */s/ Jeffrey R. Bragalone*
                                                    Jeffrey R. Bragalone (lead attorney)
                                                    Texas Bar No. 02855775
                                                    Jonathan H. Rastegar
                                                    Texas Bar No. 24064043

                                                    **BRAGALONE CONROY PC**
                                                    2200 Ross Avenue
                                                    Suite 4500W
                                                    Dallas, TX 75201
                                                    Tel: (214) 785-6670
                                                    Fax: (214) 785-6680
                                                    jbragalone@bcpc-law.com
                                                    jrastegar@bcpc-law.com