1    Robert Benson (STATE BAR NO. 155971)
     rbenson@orrick.com
2    ORRICK, HERRINGTON & SUTCLIFFE LLP
     2050 Main Street
3    Suite 1100
     Irvine, CA  92614-8255
4    Telephone:  +1 949 567 6700
     Facsimile:   +1 949 567 6710
5
     Attorney for Plaintiffs TCT MOBILE U.S. (US)
6    INC. and HUIZHOU TCL MOBILE
     COMMUNICATION CO. LTD.
7

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10

11   TCT MOBILE (US) INC. AND              Case No. 8:20-cv-00702-JVS-ADS
     HUIZHOU TCL MOBILE
12   COMMUNICATION CO. LTD.,               **MEMORANDUM OF POINTS
                                           AND AUTHORITIES IN
13              Plaintiff,                 OPPOSITION TO DEFENDANT
                                           CELLULAR
14         v.                              COMMUNICATIONS
                                           EQUIPMENT LLC'S RENEWED
15   CELLULAR COMMUNICATIONS               MOTION TO DISMISS**
     EQUIPMENT LLC,
16                                         Date:        August 3, 2020
                Defendant.                 Time:        1:30 p.m.
17                                         Courtroom: 10C
                                           Judge:       Hon. James V. Selna
18

19

20

21

22

23

24

25

26

27

28

I.    INTRODUCTION ................................................................................ 1

II.   FACTUAL BACKGROUND ............................................................... 3

      A.    To Obtain Venue in the Eastern District of Texas, CCE Only
            Named as Defendants Foreign TCL Entities That Do Not Import
            or Sell the Accused Products in the United States .......................... 3

      B.    TCT Mobile U.S. and Huizhou TCL Filed this Complaint So the
            Manufacturer of the Accused Products and the Only Entity
            Importing and Selling in the U.S. Could Be Joined in a Single
            Case .................................................................................................. 5

      C.    TCT Mobile U.S. Cannot Be Added to the Texas Litigation
            Because Venue is Improper in the Eastern District of Texas .............. 6

III.  MULTIPLE EXCEPTIONS TO THE FIRST-TO-FILE RULE AND
      JUDICIAL EFFICIENCY WEIGH STRONGLY AGAINST A
      DISMISSAL OR STAY OF THIS ACTION .................................................. 7

      A.    Exceptions to the First-To-File Rule Are "Not Rare" and Are
            Made Based on the Just and Effective Disposition of Disputes
            and the Convenience and Suitability of Competing Forums ............... 7

      B.    This Action Should Not Be Dismissed or Stayed Because TCT
            Mobile U.S. Is a "Necessary or Desirable Party" and Cannot Be
            Joined to the Texas Litigation Due to Lack of Venue ........................ 8

      C.    This Action Should Not Be Dismissed or Stayed Because This
            Is the Only Forum Where the Entire Dispute Can Be Resolved
            in a Single Litigation ...................................................................... 13

      D.    This Action Should Not Be Dismissed or Stayed Because TCT
            Mobile U.S. Has the Strongest Interest in the Outcome of This
            Dispute and Cannot Be Joined in the Eastern District of Texas ........ 16

      E.    The Balance of Convenience Factors Strongly Favors the
            Central District of California, As CCE and TCT Mobile U.S.
            Are Both Based in Orange County and the Most Significant
            Third-Party Witnesses Are Also in California ................................... 17

            1.    Most or All Relevant Witnesses and Evidence in the U.S.
                  Are Located in this Forum Because TCT Mobile U.S. and
                  CCE/Acacia Are Based in Orange County ............................... 20

            2.    Google Is the Developer of the Accused Android Code
                  and Its Witnesses and Evidence Are Also Located in
                  California .............................................................................. 22

1

**TABLE OF CONTENTS**
(continued)

2                                                                                                    **Page**

3

IV.    DEFENDANTS IN THE TEXAS ACTION WILL MOVE TO
       DISMISS, STAY OR TRANSFER OF THE TEXAS ACTION .................24

V.     CONCLUSION ............................................................................................25

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A123 Sys., Inc. v. Hydro-Quebec*,
  657 F.Supp.2d 276 (D. Mass. 2009) .................................................................. 13

*Anza Tech., Inc. v. Xilinx, Inc.*,
  No. 17-cv-0687-WJM-STV, 2017 WL 4864947, *5 (D. Colo. Oct.
  27, 2017) .......................................................................................................... 23

*Bridgelux, Inc. v. Cree, Inc.*,
  No. C 06-6495 PJH, 2007 WL 2022024 (N.D. Cal. July 9, 2007) ..................... 14

*Commc'ns Test Design, Inc. v. Contec, LLC*,
  952 F.3d 1356 (Fed. Cir. 2020) ...................................................................... 7, 8

*Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc.*,
  246 F.3d 1336 (Fed. Cir. 2001) .................................................................... 9, 10

*Elecs. for Imaging, Inc. v. Coyle*,
  394 F.3d 1341 (Fed. Cir. 2005) .......................................................................... 7

*France Telecom S.A. v. Marvell Semiconductor Inc.*,
  82 F. Supp. 3d 987 (N.D. Cal. 2015) ................................................................... 9

*Futurewei Techs., Inc. v. Acacia Research Corp.*,
  737 F.3d 704 (Fed. Cir. 2013) .................................................................. 7, 8, 16

*In re Genentech, Inc.*,
  566 F.3d 1338 (Fed. Cir. 2009) ........................................................................ 18

*Genentech, Inc. v. Eli Lilly and Co.*,
  998 F.2d 931 (Fed. Cir. 1993), *cert. denied*, 510 U.S. 1140 (1994),
  *abrogated on other grounds*, *Wilton v. Seven Falls Co.*, 515 U.S.
  277 (1995) .......................................................................................... 7, 8, 13, 16

*In re Google Inc.*,
  588 Fed. Appx. 988 (Fed. Cir. Oct. 9, 2014) ............................................. 19, 24

*In re HTC Corp.*,
  889 F.3d 1349 (Fed. Cir. 2018) .......................................................................... 1

*Katz v. Lear Siegler, Inc.*,
  909 F.2d 1459 (Fed. Cir. 1990) ........................................................... 16

*Kyocera Communications, Inc. v. Potter Voice Technologies, LLC*
  No. 13-CV-0766-H, 2013 WL 2456032, at *1 (S.D. Cal. June 5,
  2013) .................................................................................................... 11

*Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*,
  342 U.S. 180 (1952) ............................................................................ 13

*Lucent Techs., Inc. v. Gateway, Inc.*,
  580 F.3d 1301 (Fed. Cir. 2009), *cert. denied*, 130 S. Ct. 3324
  (2010).................................................................................................... 9

*MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*,
  420 F.3d 1369 (Fed. Cir. 2005) ........................................................... 16

*Metropolitan Life Ins. Co. v. Bancorp Serv., LLC*,
  No. 4:07-cv-1338, 2007 WL 4404175 (E.D. Mo. Dec. 17, 2007) ............... 20, 21

*Micron Tech., Inc. v. Mosaid Techs., Inc.*,
  518 F.3d 897 (Fed. Cir. 2008) ...................................................... 7, 8, 17

*Nexon America Inc. v. Uniloc 2017 LLC*,
  No. 19-1096-CFC, 2020 WL 3035647 (D. Del. June 5, 2020).......................... 11

*Ours Tech., Inc. v. Data Drive Thru, Inc.*,
  645 F. Supp. 2d 830 (N.D. Cal. 2009)................................................. 10

*Pacific Coast Bldg. Prod., Inc. v. CertainTeed Gypsum Mfg., Inc.*,
  No. 4:18-cv-4165, 2019 WL 4046550 (W.D. Ark. Aug. 27, 2019).................. 19

*Package Concepts & Materials, Inc.*,
  No. 6:05-1184-HMH, 2005 WL 3055073 at *6 (D.S.C. Nov. 14,
  2005).................................................................................................... 14

*Polymer Indus. Prod. Co. v. Bridgestone/Firestone, Inc.*,
  347 F.3d 935 (Fed. Cir. 2003) ........................................................... 15

*Rockstar Consortium US LP v. Samsung Elec.s Co., Ltd.*,
  No. 13-5933-CW, 2014 WL 1571807 (N.D. Cal. April 17, 2014) .................... 19

iv

*Silicon Labs. Inc. v. Maxlinear, Inc.*,
   No. 12-CV-1765, 2012 WL 12885232 (S.D. Cal. Oct. 17, 2012) ..................... 12

*Spread Spectrum Screening LLC v. Eastman Kodak Co.*,
   657 F.3d 1349 (Fed. Cir. 2011) ....................................................................... 16

*Summit 6 LLC v. Research in Motion Corp.*,
   No. 3:11-cv-367, 2013 WL 12124321, at *4 (N.D. Tex. June 26,
   2013) ................................................................................................................. 9

*TC Heartland LLC v. Kraft Foods Group Brands LLC*,
   137 S. Ct. 1514, 1521 (2017) ........................................................................... 6

*In re Verizon Bus. Network Servs. Inc.*,
   635 F.3d 559 (Fed. Cir. 2011) ......................................................................... 23

*Woodway USA, Inc. v. Samsara Fitness, LLC*,
   No. 15-cv-956-pp, 2016 WL 3282218 (E.D. Wis. June 14, 2016) .................... 12

**Statutes**

28 U.S.C. § 1400(b) ................................................................................................. 6

28 U.S.C. § 1404(a) ........................................................................................... 17, 18

35 U.S.C. § 271(a) .............................................................................................. 8, 16

**Other Authorities**

Fed. R. Civ. P. Rule 12(h)(1) ................................................................................. 22

Fed. R. Civ. P. 19 .................................................................................................. 25

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.     INTRODUCTION

This is a patent dispute between two companies based in Irvine, California. Cellular Communications Equipment LLC ("CCE") is a patent monetization entity owned by Acacia Research.  The overlapping officers of CCE and Acacia are predominantly in Irvine, California.  TCT Mobile (US) Inc. ("TCT Mobile U.S.") is also based in Irvine and is the only TCL-related entity that imports and sells the accused Android phones in the United States.  Google develops the Android code accused of infringement and is similarly headquartered in California.

In March 2020, CCE filed a patent case in the Eastern District of Texas against TCL-related entities *located in China*.  CCE does not allege any specific acts of direct infringement in the U.S. by any of the foreign defendants, nor can it. Rather, CCE repeatedly alleges that the Chinese companies "control" or conduct business "through or in concert with" TCT Mobile U.S.  Yet TCT Mobile U.S. is not named as a defendant in the Texas action.  How did we get into this situation?

CCE is known as a "Highly Assertive Entity," a company with "a business model focused solely or significantly on deriving economic benefit from asserting patent rights in legal proceedings."[1]  The Eastern District of Texas had been the most popular district for such patent assertion entities, but this changed after *TC Heartland*, which restricted venue in patent cases.  New patent lawsuit filings in the Eastern District plummeted more than 65% the following year.[2]

NPEs such as CCE devised a workaround.  Venue for foreign defendants is proper in any district.  *In re HTC Corp.*, 889 F.3d 1349, 1357-58 (Fed. Cir. 2018). So, to maintain a suit in the Eastern District of Texas, CCE only sued five TCL-related entities based in China.  Motion at Ex. C, ¶¶ 2-6.  CCE then asserted direct infringement of a method claim based on alleged "testing" of the accused phones.

---

[1] *Analysis of Patent Litigation in the Eastern District of Texas*, Docket Navigator, at 11-12 (2018), attached to Benson Decl., Ex. 16.

[2] M. Curriden, *TC Heartland Anniversary: EDTX Patent Filings Plummet, NDTX Benefits,* The Texas Lawbook (May 20, 2018), attached to Benson Decl., Ex. 17.

1   But CCE never alleges that the foreign defendants test products in the U.S., nor can
2   it.  None of the named foreign defendants make, sell, offer for sale, use, or import
3   the accused products into the U.S.  *See infra* at 3-4.  To address this issue, CCE has
4   advanced an unsupported theory that these foreign entities somehow "control" or
5   work "in concert with" TCT Mobile U.S.  At the same time, CCE has intentionally
6   omitted TCT Mobile U.S. from the Texas lawsuit, because naming TCT Mobile
7   U.S. would defeat venue in Texas.  And depending on the outcome, CCE may still
8   be able to sue TCT Mobile U.S. for infringement in a future lawsuit.

9        To remedy this unjust and judicially inefficient situation, the most interested
10  parties filed a declaratory judgment action in this Court:  TCT Mobile U.S. and
11  Huizhou TCL Mobile Communication Co. Ltd. ("Huizhou TCL"), the manufacturer
12  of the accused products.  CCE can counterclaim for infringement and bring all
13  defendants in the Texas litigation into this action, who will not object to venue or
14  personal jurisdiction in this Court, for this case only.  Benson Decl. ¶ 11.  In this
15  way, CCE's infringement claims can be resolved *in a single litigation*, with <u>all</u>
16  interested parties participating, <u>and</u> in the most convenient and interested forum.

17       Federal Circuit precedent supports exercising jurisdiction in this situation,
18  even if it is the second-filed case.  Numerous exceptions to the "first-filed" rule
19  apply under these facts.  First, TCT Mobile U.S. is clearly a "necessary or desirable
20  party," as it is central to this dispute, but it cannot be joined to the Texas action
21  because venue would be improper.  Second, this is the only Court in which all of
22  CCE's claims for infringement of the '923 patent by all TCL-related entities can be
23  resolved in a single case, to avoid multiplicity of litigation.  Third, TCT Mobile
24  U.S. has the strongest interest in this patent dispute, as the only entity that can
25  potentially be held liable for importing and selling the accused products in the U.S.
26  This further weighs in favor of a forum where TCT Mobile U.S. can participate in
27  the litigation.  And finally, the balance of convenience factors strongly favors this
28  forum.  CCE's motion to dismiss or stay this case should be denied.

2

## II.   FACTUAL BACKGROUND

### A.   To Obtain Venue in the Eastern District of Texas, CCE Only Named as Defendants Foreign TCL Entities That Do Not Import or Sell the Accused Products in the United States

On March 17, 2020, CCE filed its Original Complaint in the Eastern District of Texas, asserting infringement of U.S. Patent No. 7,218,923 ("the '923 patent") by two defendants, TCL Corporation ("TCL Corp.") and TCL Electronics Holdings Limited ("TCL Electronics").  TCT Mobile U.S.'s Amended Complaint, D.I. 20-2, Ex. B.  CCE's Complaint alleged that TCL Corp. is a Chinese corporation with its principal place of business in China, and that TCL Electronics is a Cayman Islands company with its principal place of business in Hong Kong.  *Id.,* Ex. B ¶¶ 2-3.

After Plaintiffs TCT Mobile U.S. and Huizhou TCL filed their Complaint in this action, *infra* at 5-6, CCE filed an Amended Complaint in the Eastern District of Texas—but intentionally omitted TCT Mobile U.S.  CCE added three new foreign defendants:  TCL Communication Technology Holdings Limited ("TCL Communication"), Huizhou TCL Mobile Communication Co. Ltd. ("Huizhou TCL") and TCT Mobile U.S. International Ltd. ("TCT HK").  TCT Mobile U.S.'s Amended Complaint, D.I. 20-4, Ex. D, ¶¶ 2-36.  CCE's Amended Complaint alleges that TCL Communication is a Cayman Islands company with its principal place of business in China; that Huizhou TCL is a Chinese company with its principal place of business in China; and that TCT International is a Hong Kong company with its principal place of business in Hong Kong.  *Id.* ¶¶ 3-5.

None of the foreign defendants named in the Texas litigation are involved in any business activities in the U.S. related to the accused products.  TCL Corp., TCL Electronics, and TCL Communication are mere holding companies, their business activities only consisting of the holding of their subsidiaries.  Zhou Decl. ¶ 6; Yin Decl. ¶ 6; Yeh Decl. (TCL Communication) ¶ 6.  None of TCL Corp., TCL Electronics, or TCL Communication "design, develop, manufacture, sell, offer for sale, use, import, export, or distribute any of the products identified in CCE's

Complaint," nor do they place such products into the stream of commerce. Zhou Decl. ¶ 7; Yin Decl. ¶ 7; Yeh Decl. (TCL Communication) ¶ 7. Moreover, while CCE often asserts that TCL Corp. is the parent company of the other foreign defendants, everything cited by CCE is dated before 2019. TCL Corp. divested itself of any interest in the other defendants in March 2019. Yin Decl. ¶¶ 8-13.

Huizhou TCL and TCT HK are the only two defendants named in the Texas litigation that are actively engaged in the business of mobile phones, but they do not conduct such business activities in the United States. Huizhou TCL manufactures the accused products in China, but it "does not … and did not, make, use, offer to sell, or sell in the United States, or import into the United States" any of the accused products or other mobile phones. Yeh Decl. (Huizhou TCL) ¶ 7. Similarly, TCT HK sells the accused products in China, but it likewise "does not … and did not, make, use, offer to sell, or sell in the United States, or import into the United States" any of the accused products. Yeh Decl. (TCT HK) ¶ 7.

Consistent with the evidence presented in support of this Opposition, a careful review of CCE's Amended Complaint reveals that CCE does not allege that any of the five foreign defendants themselves engage in any specific acts of infringement in the United States. For direct infringement, CCE alleges that Defendants "either by themselves or via an agent" infringe the '923 patent by "practicing the method of claim 1 via at least its testing of the native Messaging application in its Android phones." TCT Mobile U.S.'s Amended Complaint, D.I. 20-4, Ex. D ¶ 48. CCE does not allege any facts of testing in the U.S., by any of the named foreign defendants or otherwise. *Id.* CCE's claims are thus based primarily on an allegation of indirect infringement, namely, that "Defendants instruct and encourage users to use the Accused Products in a manner that infringes the '923 patent." *Id.* ¶¶ 53-54. CCE seeks damages and injunctive relief. *Id.* at pp. 18-19.

CCE improperly served the Original Complaint in the Texas litigation, which led to early communications between counsel for the parties. Johnson Decl. ¶¶ 3-6.

4

During those discussions, counsel for the named defendants requested a five-month extension to respond to the complaint to relieve CCE of the extensive delays and rigors of serving defendants in China pursuant to the Hague Convention. *Id.* It is counsel's recent experience that serving defendants in China, as required under the Hague Convention, can take from 8 to 12 months, and due to the current pandemic, it may take even longer. *Id.* ¶ 7. The parties ultimately agreed on an extension of time to respond to the Amended Complaint, for all five foreign defendants, to September 7, 2020, based on the defendants' waiver of service. *Id.* ¶¶ 8-13.

The reason for the elongated extension of time in Texas was that it eliminated the need for service under the Hague Convention, which would have taken much longer. *Id.* ¶¶ 3-13. Complications due to the coronavirus were mentioned, given the location of the defendants in China, but were not the primary basis for the extension. *Id.* CCE's failure to mention waiver of service under the Hague Convention is disingenuous, at best, and its assertion that counsel in this action used Covid-19 as the sole basis for this extension is simply false. *Id.*

**B.     TCT Mobile U.S. and Huizhou TCL Filed this Complaint So the Manufacturer of the Accused Products and the Only Entity Importing and Selling in the U.S. Could Be Joined in a Single Case**

On April 9, 2020, prior to CCE filing an Amended Complaint in the Texas litigation, TCT Mobile U.S. and Huizhou TCL filed a Complaint for declaratory judgment of non-infringement in this Court. On June 22, 2020, Plaintiffs filed an Amended Complaint in this Court to resolve one of the issues raised by CCE's prior motion to dismiss regarding its pleading of non-infringement. TCT Mobile U.S. and Huizhou TCL seek a declaration that none of the accused phone products infringe the '923 patent and that none of their activities directly or indirectly infringe the patent. TCT Mobile U.S.'s Amended Complaint, D.I. 20, ¶¶ 20-23.

TCT Mobile U.S. and Huizhou TCL filed this action because they are the two entities that are most interested in the outcome of the litigation and neither entity was named in CCE's Original Complaint in the Eastern District of Texas.

MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO RENEWED MOTION TO
DISMISS – CASE 8:20-CV-00702-JVS-ADS

Huizhou TCL manufactures the accused products, and more generally, is the only TCL entity whose principal activities include manufacturing. *Id.* ¶ 13.  Huizhou TCL manufactures mobile phone products in China, including the accused products.  Yeh Decl. (Huizhou TCL) ¶ 2.  Huizhou TCL does not and has not engaged in making, using, selling, offering for sale, or importing the accused products in the U.S.  *Id.*

TCT Mobile U.S. is the TCL-related entity that imports the accused products into the U.S. and then sells the products in the U.S.  Amended Complaint, D.I. 20, ¶ 14; Yeh Decl. ¶ 6.  "TCL Mobile (US) Inc. is the TCL-related entity that is responsible for and engaged in importing, selling, and marketing the Accused Products in the United States."  *Id.*  As further explained elsewhere, TCT Mobile U.S. is at the center of CCE's claims and is the most interested party in the outcome of this dispute, yet it is excluded from the Texas litigation.

### C. TCT Mobile U.S. Cannot Be Added to the Texas Litigation Because Venue is Improper in the Eastern District of Texas

Venue over TCT Mobile U.S. would be improper in the Eastern District of Texas.  Thus, TCT Mobile U.S. was not named as a defendant in the Texas litigation, nor can it be added as a defendant in the Texas action.  Presumably, this is the reason that CCE has moved to dismiss or stay the present action and did not move to transfer this action to the Eastern District of Texas.

Under 28 U.S.C. § 1400(b), "Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business."  In *TC Heartland LLC v. Kraft Foods Group Brands LLC*, the U.S. Supreme Court held that a domestic corporation only "resides" in its state of incorporation.  137 S. Ct. 1514, 1521 (2017).  Accordingly, venue over TCT Mobile U.S. does not exist in the Eastern District of Texas.  TCT Mobile U.S. is incorporated in Delaware and has its principal place of business in Irvine,

California.  Yeh Decl. (TCT Mobile U.S.) ¶¶ 3-4.  TCT Mobile U.S. does not own or lease any real property in Texas; has no offices, facilities, places of business or other physical location in Texas; and has no employees or agents in Texas.  *Id.* ¶ 7.

## III.   MULTIPLE EXCEPTIONS TO THE FIRST-TO-FILE RULE AND JUDICIAL EFFICIENCY WEIGH STRONGLY AGAINST A DISMISSAL OR STAY OF THIS ACTION

### A.   Exceptions to the First-To-File Rule Are "Not Rare" and Are Made Based on the Just and Effective Disposition of Disputes and the Convenience and Suitability of Competing Forums

When an infringement action and a declaratory judgment action are pending in two different courts, the "general rule favors the forum of the first-filed action," but "courts have discretion to make exceptions to this general rule in the interest of justice or expediency." *Micron Tech., Inc. v. Mosaid Techs., Inc.*, 518 F.3d 897, 904 (Fed. Cir. 2008).  *Accord*, *Genentech, Inc. v. Eli Lilly and Co.*, 998 F.2d 931, 937 (Fed. Cir. 1993), *cert. denied*, 510 U.S. 1140 (1994), *abrogated on other grounds*, *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995).  "Application of the first-to-file rule is generally a matter for a district court's discretion, exercised within governing legal constraints." *Futurewei Techs., Inc. v. Acacia Research Corp.*, 737 F.3d 704, 708 (Fed. Cir. 2013).

Exceptions to the "first-filed" rule "are not rare, and are made when justice or expediency requires." *Genentech*, 998 F.2d at 937.  Exceptions may be made if justified by "considerations of judicial and litigant economy, and the just and effective disposition of disputes." *Futurewei*, 737 F.3d at 708; *Elecs. for Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1347 (Fed. Cir. 2005).  "The first-filed suit rule … will not always yield the most convenient and suitable forum.  Therefore, the trial court weighing jurisdiction additionally must consider the real underlying dispute: the convenience and suitability of competing forums." *Micron*, 518 F.3d at 904. When patent rights are at issue, Federal Circuit precedent governs whether the first-filed rule should be applied to accepting jurisdiction over a declaratory judgment action. *Commc'ns Test Design, Inc. v. Contec, LLC*, 952 F.3d 1356, 1362 (Fed.

Cir. 2020); *Futurewei*, 737 F.3d at 708; *Genentech*, 998 F.2d at 938.

The Federal Circuit has expressed concern that both patent holders and declaratory judgment filers may have the incentive and opportunity to "race to the courthouse." Therefore, when deciding which of two parallel actions should proceed, district courts "should not reach a decision based on any categorical rules" based on the timing of the actions but rather "consider the real underlying dispute: the convenience and suitability of competing forums." *Micron*, 518 F.3d at 904.

> "The convenience and availability of witnesses, absence of jurisdiction over all necessary or desirable parties, possibility of consolidation with related litigation, or considerations relating to the interest of justice must be evaluated to ensure the case receives attention in the most appropriate forum. Eventually, robust consideration of these factors will reduce the incentives for a race to the courthouse because both parties will realize that the case will be heard or transferred to the most convenient or suitable forum."

*Id.* at 904-05. *Accord*, *Commc'ns Test Design,* 952 F.3d at 1362. Considerations relating to the real party in interest also impact whether the second-filed case should be stayed or dismissed. *Futurewei*, 737 F.3d at 708; *Genentech*, 998 F.2d at 938.

### B. This Action Should Not Be Dismissed or Stayed Because TCT Mobile U.S. Is a "Necessary or Desirable Party" and Cannot Be Joined to the Texas Litigation Due to Lack of Venue

CCE's Amended Complaint in the Eastern District of Texas demonstrates that TCT Mobile U.S. is central to the infringement claims and to this patent dispute. One of the primary exceptions to the "first-to-file" rule is where there is an "absence of jurisdiction over all necessary or desirable parties" in the first-filed case. *Futurewei,* 737 F.3d at 708. That is exactly the situation presented here.

The only specific claim asserted in CCE's Amended Complaint is method claim 1 of the '923 patent. A company that does not practice a patented method in the United States cannot be liable for direct infringement. 35 U.S.C. § 271(a);

*Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1351 (Fed. Cir. 2001). "A defendant can only directly infringe a method claim ... by 'using' the method within the United States, which requires that the defendant practice every step of the method within the United States." *France Telecom S.A. v. Marvell Semiconductor Inc.*, 82 F. Supp. 3d 987, 993 (N.D. Cal. 2015). "To infringe a method claim, a person must have practiced all steps of the claimed method." *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1317 (Fed. Cir. 2009), *cert. denied*, 130 S. Ct. 3324 (2010). Thus, in *Summit 6 LLC v. Research in Motion Corp.*, the Court held that neither a foreign nor a domestic Samsung entity directly infringed a method claim because there was a lack of evidence that either company "practiced the method claims in the United States, for example, by testing the product." No. 3:11-cv-367, 2013 WL 12124321, at *4 (N.D. Tex. June 26, 2013) (simply creating software that directly infringes a method claim cannot constitute direct infringement).

CCE's sole theory of direct infringement is recited in paragraph 48 of its Amended Complaint: "On information and belief, Defendants have, and continue to, either by themselves <u>or via an agent</u>, infringe at least [method] claim 1 of the '923 patent by, among other things, practicing the method of claim 1 via at least its testing of the native Messaging application in its Android phones." TCT Mobile U.S.'s Amended Complaint, D.I. 20-4, Ex. D ¶ 48 (emphasis added). CCE admits that all named defendants have their principal places of business outside the United States. *Id.* ¶¶ 2-6. TCT Mobile U.S. is the only TCL-related entity responsible for importing, selling and marketing the accused products in the U.S. and it is also involved in customer support. Yeh Decl. (TCT Mobile U.S.) ¶¶ 6, 10, 11. If any alleged "testing" were done in the U.S., it would be performed by TCT Mobile U.S., which CCE apparently alleges to be an "agent" of the foreign defendants.

Other allegations in CCE's Amended Complaint further demonstrate that TCT Mobile U.S. is going to be central to any claims of direct infringement in the

9

United States.  For example, CCE alleges that the named foreign defendants "control" TCT Mobile U.S. Inc. and that they have committed acts of direct and/or indirect patent infringement within the United States "directly or through intermediaries, such as TCT Mobile (US)."  *Id.* ¶¶ 17, 18, 21, 22, 25, 26, 29, 30.  Thus, CCE's Amended Complaint confirms that TCT Mobile U.S. is going to be at the center of its direct infringement claims in the Texas litigation, even though it cannot be named as a defendant in that case.

TCT Mobile U.S. is also going to be central to CCE's claims of inducing infringement against the foreign defendants named in its Texas complaint.  "Inducement only occurs if the party being induced directly infringes the patent."  *Crystal Semiconductor*, 246 F.3d at 1351.  CCE alleges that "Defendants have specifically intended for persons who acquire and use the Accused Products, including Defendants' customers and end consumers, to acquire and/or use such devices in a way that infringes the '923 patent."  TCT Mobile U.S.'s Amended Complaint, D.I. 20-4, Ex. D ¶ 53.  CCE does not allege that the foreign defendants themselves sell the accused products in the U.S. or that they have any interactions with "customers and end consumers."  In fact, it is TCT Mobile U.S. that sells and markets the accused products to customers and end consumers in the U.S. and is responsible for "customer support."  Yeh Decl. (TCT Mobile U.S.) ¶¶ 10-13.  It is unavoidable that TCT Mobile U.S. is going to be a central player in CCE's inducement claims against the foreign TCL entities.

Where one case involves a direct infringer, and a parallel case in another forum involves indirect infringers, "it is sensible, more appropriate, and more convenient" to first adjudicate the suit that involves the direct infringement, which in this situation, is TCT Mobile U.S.'s declaratory judgment action.  *Ours Tech., Inc. v. Data Drive Thru, Inc.*, 645 F. Supp. 2d 830, 840 (N.D. Cal. 2009).  TCT Mobile U.S. has put at issue, in this declaratory judgment action, whether it infringes method claim 1 or any other claim of the '923 patent.  TCT Mobile U.S.'s

Amended Complaint, D.I. 20 ¶ 21-23.  Accordingly, this suit should proceed first.

Because TCT Mobile U.S. is a "necessary or desirable party" to CCE's infringement claims, TCT Mobile U.S.'s declaratory judgment action should not be stayed or dismissed, even if it was second-filed.  A recent case from the District of Delaware illustrates the application of this principle.  In *Nexon America Inc. v. Uniloc 2017 LLC*, a non-practicing entity, Uniloc 2017 LLC, brought an infringement action in the Eastern District of Texas against two foreign defendants, Nexon Japan and Nexon Korea, alleging infringement of the '578 and '293 patents.  No. 19-1096-CFC, 2020 WL 3035647 (D. Del. June 5, 2020).  A related entity, Nexon America, subsequently filed a declaratory judgment for non-infringement in the District of Delaware, and Uniloc filed a motion to dismiss under the first-filed rule.  *Id.* at *1.  Nexon America submitted a declaration that it had sole responsibility for the development, distribution and use of the accused software in the United States, not the foreign entities in the Nexon corporate family.  Civ. Action No. 19-1096-CFC at D.I. 15, ¶¶ 3-5.  Venue over Nexon America was not proper in the Eastern District of Texas, as it was a Delaware corporation without facilities or employees in the Eastern District of Texas.  *Id.* at D.I. 1, ¶ 2.  The Court in the second-filed declaratory judgment action denied the motion to dismiss, holding, "I will not apply the first-filed rule here because the Eastern District does not have venue over Nexon America and Nexon America is a desirable, if not necessary, party to that case."  2020 WL 3035647, at *4.

A similar issue arose in *Kyocera Communications, Inc. v. Potter Voice Technologies, LLC*.  A non-practicing entity, Potter Voice Technologies, filed a patent infringement action in the District of Colorado alleging infringement of the '659 patent against several defendants, including an infringement claim against Kyocera International, Inc. based on its selling of the Kyocera Echo phone and similar products.  No. 13-CV-0766-H, 2013 WL 2456032, at *1 (S.D. Cal. June 5, 2013).  Kyocera Communications, Inc. ("KCI"), the subsidiary of Kyocera

11

International, Inc., subsequently filed a declaratory judgment action for non-infringement.  The Court denied Potter's motion to dismiss the second-filed declaratory judgment action under the first-to-file rule because the declaratory judgment action was the first case involving KCI and it was "unclear whether KCI will be added as a party to the Colorado action."  *Id.* at *5.

The first-filed infringement suit was also dismissed in *Woodway USA, Inc. v. Samsara Fitness, LLC*, in favor of a second-filed declaratory judgment suit for non-infringement.  No. 15-cv-956-pp, 2016 WL 3282218 (E.D. Wis. June 14, 2016).  In that case, defendants were accused of manufacturing and selling infringing treadmills.  However, the forum for the second-filed declaratory judgment action had personal jurisdiction over both defendants, whereas the court with the first-filed infringement suit lacked jurisdiction and venue over Chapco, Inc., one of the two defendants.  The first-filed infringement case was dismissed.  The court held that because it did not have "personal jurisdiction over 'all necessary or desirable parties,'" the patent owner was "not entitled to the benefits of the first-to-file rule." *Id.* at *6.  *See also Silicon Labs. Inc. v. Maxlinear, Inc.*, No. 12-CV-1765, 2012 WL 12885232 (S.D. Cal. Oct. 17, 2012) (denying a motion to dismiss infringement claims in a second-filed case where there was mere *uncertainty* as to whether the Court in the first-filed case had personal jurisdiction over all the parties).

As established by the evidence submitted with this motion, *supra* at 3-4, and the allegations in CCE's Amended Complaint, the foreign defendants in the Texas action are not themselves directly infringing the '923 patent.  The only TCL entity that is importing or selling the accused products in the United States is TCT Mobile U.S.  The allegations in its Amended Complaint indicate that CCE is contending that TCT Mobile U.S. acted as the "agent" of the foreign defendants; that TCT Mobile U.S. and the foreign defendants "work in concert together … to conduct business in the United States"; and/or that the foreign defendants "control" TCT Mobile U.S. and are therefore somehow liable for its actions.  TCT Mobile U.S.'s

12

1   Amended Complaint, D.I. 20-4, Ex. D ¶¶ 11, 16, 18, 20, 22, 24, 26, 28, 30, 32, 33,

2   48.  Accordingly, TCT Mobile U.S. is a "necessary or desirable party" to the

3   litigation of CCE's claims.  Since it cannot be joined to the Texas action—but those

4   defendants can be joined here—CCE's motion to dismiss or stay should be denied.

5         **C.**    **This Action Should Not Be Dismissed or Stayed Because This Is**

6              **the Only Forum Where the Entire Dispute Can Be Resolved in a**
           **Single Litigation**

7         The TCL entities should not be subject to multiple litigations simply because

8   CCE—a patent monetization entity that has its principal place of business in Irvine,

9   California—prefers to file patent cases in the Eastern District of Texas.  The

10  Central District of California is the only forum in which CCE's infringement claims

11  can be resolved, in their entirety, against all TCL entities, in one litigation.  Judicial

12  efficiency and conservation of the parties' resources therefore weigh against a

13  dismissal or stay of this action.

14        The Federal Circuit has held that when evaluating an exception to the "first-

15  to-file" rule, courts must consider "the importance of conservation of judicial

16  resources and the comprehensive disposition of litigation."  *Genentech,* 998 F.2d at

17  938.  In exercising its discretion under the Federal Declaratory Judgment Act,

18  district courts are counseled to give "regard to conservation of judicial resources

19  and comprehensive disposition of litigation" and to avoid a "rigid mechanical

20  solution."  *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.,* 342 U.S. 180, 183

21  (1952) (further suggesting that forums should not be selected due to a perceived

22  "greater hospitality to patents").  Ultimately, courts must consider the purpose of

23  "prevent[ing] multiplicity of actions and to achieve resolution in a single lawsuit of

24  all disputes arising out of common matters."  *Genentech,* 998 F.2d at 938.

25        Where a desirable or necessary party can be a party to the second-filed action

26  but not the first-filed case, the first-filed action should "yield to a later-filed action,

27  in which the court may achieve a comprehensive resolution of the entire dispute."

28  *A123 Sys., Inc. v. Hydro-Quebec,* 657 F.Supp.2d 276, 279-80 (D. Mass. 2009)

13

(dismissing first-filed action where a necessary party could not be joined but was a party to the second-filed suit). *See also Bridgelux, Inc. v. Cree, Inc.,* No. C 06-6495 PJH , 2007 WL 2022024 at *5 (N.D. Cal. July 9, 2007) (denying a motion to dismiss a second-filed declaratory judgment action for non-infringement where it appeared likely that the court in the first-filed patent infringement action lacked personal jurisdiction over Bridgelux, Inc., the plaintiff in the second-filed declaratory judgment action); *Package Concepts & Materials, Inc.,* No. 6:05-1184-HMH, 2005 WL 3055073 at *6 (D.S.C. Nov. 14, 2005) (transferring first-filed case to forum of second-filed infringement action where court of first-filed case did not have personal jurisdiction over a necessary defendant).

The present situation presents an intertwining of indirect infringement claims against foreign defendants in the Texas litigation and potential direct infringement claims that CCE might later assert against the U.S. entity, TCT Mobile U.S. As a result, there are a multitude of scenarios in which the resolution of CCE's claims in the Texas action may not dispose of its potential claims against TCT Mobile U.S., leading to a multiplicity of litigation if this California action is dismissed.

For example, CCE's Amended Complaint in Texas asserts that the foreign defendants directly infringe method claim 1 of the '923 patent by allegedly "testing" products in the U.S. through an unidentified "agent" and indirectly infringe by allegedly inducing "customers and end consumers" to practice the patented method. CCE's Amended Complaint ¶¶ 48, 53. If CCE does not prevail on these claims against the foreign defendants, it leaves open the possibility that CCE could try to sue TCT Mobile U.S. for direct infringement of the apparatus claims of the '923 patent, as it did in prior litigation against other mobile phone defendants (Benson Decl. Ex. 15), based on TCT Mobile U.S.'s importation and sale of the accused products in the U.S. Since TCT Mobile U.S. imports and sells the accused products in the U.S., and none of the foreign defendants named in the Texas litigation are engaged in selling or importing the products into the U.S., there

is a very high likelihood that the Texas litigation will not resolve all of CCE's claims against TCL-related entities, particularly TCT Mobile U.S..

As another example, CCE's direct infringement claims against the foreign TCL entities rest on an assertion of infringing method claim 1 of the '932 patent by "testing" accused products in the U.S.  CCE's Amended Complaint ¶ 48.  To the extent that the foreign defendants do not engage in such testing in the U.S.—they do not—the Texas litigation may leave unadjudicated whether TCT Mobile U.S. might be sued for any acts of testing that it may perform independent of any agency relationship with the foreign defendants.

While the above scenarios might be precluded by application of rules of res judicata and claim preclusion, consolidating CCE's claims against all TCL-related entities in this forum eliminates the potential of a multiplicity of litigation against different TCL entities based on different acts of alleged infringement of the '923 patent.  This is precisely what TCT Mobile U.S. and Huizhou TCL sought to avoid in filing this declaratory judgment action.  This is the ***only*** action in which CCE's infringement claims against the TCL entities can be fully resolved in a single case, because it is the only action in which venue is appropriate over TCT Mobile U.S.

If the present case is not dismissed or stayed, CCE can counterclaim for infringement and add as counter-defendants all the foreign defendants sued in the Eastern District of Texas, who have agreed not to dispute personal jurisdiction or venue in this forum for purposes of this case.  Benson Decl. ¶ 11.  "[A] claim for a declaration of noninfringement makes a counterclaim for patent infringement compulsory" under Rule 13(a).  *Polymer Indus. Prod. Co. v. Bridgestone/Firestone, Inc.,* 347 F.3d 935, 938 (Fed. Cir. 2003).  In response to the counterclaims, counter-defendants will be required to assert all defenses to those claims, including defenses of non-infringement and invalidity.  In this manner, all claims and defenses involving CCE and all TCL-related entities can be joined in this forum and resolved in a single litigation, which is not possible in the Eastern District of Texas.

15

**D.    This Action Should Not Be Dismissed or Stayed Because TCT Mobile U.S. Has the Strongest Interest in the Outcome of This Dispute and Cannot Be Joined in the Eastern District of Texas**

An independent but related reason for denying CCE's motion to dismiss or stay is that TCT Mobile U.S. is the "real party in interest," because it is the party that could be most impacted by the outcome of this dispute.  This is another consideration that weighs strongly against dismissing or staying a second-filed declaratory judgment action and it directly applies here.

When deciding whether a second-filed case should be stayed or dismissed, courts must also weigh "considerations relating to the real party in interest." *Futurewei,* 737 F.3d at 708; *Genentech,* 998 F.2d at 938.  This principle led to the development of the "customer suit" exception, in which a second-filed declaratory judgment action brought by a manufacturer is given priority over a first-filed infringement action because the manufacturer is recognized as the "real party in interest," *i.e.,* the party with the greatest interest in resolving the patent dispute.  *See Spread Spectrum Screening LLC v. Eastman Kodak Co.,* 657 F.3d 1349, 1357-58 (Fed. Cir. 2011); *Katz v. Lear Siegler, Inc.,* 909 F.2d 1459, 1464 (Fed. Cir. 1990).

Plaintiffs do not assert the customer suit exception here, but the principles underlying that doctrine apply.  TCT Mobile U.S. is the only TCL-related entity that imports and sells the accused products in the United States, and accordingly, TCT Mobile U.S. is the single TCL entity that has potential liability for direct infringement under 35 U.S.C. § 271(a).  "It is well-established that the reach of section 271(a) is limited to infringing activities that occur within the United States." *MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.,* 420 F.3d 1369, 1375-76 (Fed. Cir. 2005).  Accordingly, TCT Mobile U.S. indisputably has the strongest financial interest in the adjudication of CCE's infringement claims.

TCT Mobile U.S. is the "real party in interest" regardless of which claims of the '923 patent are eventually asserted, whether in the Texas litigation or thereafter. If CCE asserts method claims, such as the currently asserted claim 1, TCT Mobile

16

U.S has the greatest potential exposure because it is the only TCL-entity in either litigation that does business in the United States.  If CCE asserts infringement of apparatus claims, such as claim 24 (as asserted by CCE in prior litigation), once again, TCT Mobile U.S. has the greatest interest in the action because it is the only entity directly importing and selling the accused products in the U.S.  No matter which claims are asserted, TCT Mobile U.S. should not be left on the sidelines while CCE litigates its infringement claims against foreign related entities and seeks damages and injunctive relief with respect to products being imported and sold in the U.S. by TCT Mobile U.S.

**E.    The Balance of Convenience Factors Strongly Favors the Central District of California, As CCE and TCT Mobile U.S. Are Both Based in Orange County and the Most Significant Third-Party Witnesses Are Also in California**

The reasons set forth above are more than enough to support this Court exercising its jurisdiction over the declaratory judgment action filed by TCT Mobile U.S. and Huizhou TCL.  However, the convenience of parties and witnesses *further* supports exercising jurisdiction over this action and denying CCE's motion.

"District courts, typically the ones where declaratory judgment actions are filed … will have to decide whether to keep the case or decline to hear it in favor of the other forum, most likely where the infringement action is filed.  Instead of … automatically going with the first filed action, the more appropriate analysis takes account of the convenience factors under 28 U.S.C. § 1404(a)." *Micron Tech., Inc. v. Mosaid Technologies, Inc.,* 518 F.3d 897, 904 (Fed. Cir. 2008).  "The first-filed rule … will not always yield the most convenient and suitable forum.  Therefore, the trial court weighing jurisdiction additionally must consider the real underlying dispute: the convenience and suitability of competing forums. In sum, the trial court must weigh the factors used in a transfer analysis as for any other transfer motion." *Id.*  Moreover, "[i]n patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the

defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech, Inc.,* 566 F.3d 1338,  1345 (Fed. Cir. 2009).

In *Google Inc. v. Rockstar Consortium U.S. LP,* a non-practicing entity, Rockstar Consortium U.S. LP, filed suit in the Eastern District of Texas against HTC, LG, Samsung, and other mobile phone device manufacturers alleging infringement of its patents.  No. 13-5933-CW, 2014 WL 1571807 (N.D. Cal. April 17, 2014).  In that case, as here, Rockstar accused of infringement "certain mobile communication devices having a version (or adaption thereof) of Android operating system," which is developed by Google.  About two months later, Google filed a declaratory judgment action of non-infringement in the Northern District of California, seeking a declaration that the Android code used in mobile phone products, and its own mobile phone products using that code, did not infringe Rockstar's patents.  *Id.* at *2.

The Northern District of California denied Rockstar's motion to dismiss or transfer the second-filed declaratory judgment action, finding that the Court "could make an exception to the general rule giving preference [to] the first-filed case" by considering the "convenience factors" under the transfer analysis of 28 U.S.C. § 1404(a)."  *Id.* at *9.  The Court found that the convenience and availability of witnesses was the "single most important factor" in the analysis and that it favored California because (1) Google's Android code was the target of the infringement claims and its Android platform was designed and created in California; (2) many of the relevant witnesses and other evidence related to the design and development of the Android code were located in California; and (3) there were no witnesses in Texas essential to the suit.  *Id.*  The Court also found that the Northern District of California had a greater interest in the litigation than the Eastern District of Texas because the allegedly infringing code was developed in Silicon Valley, and the Court had an interest in protecting "the work and reputation" of individuals residing in its community.  *Id.* at 10.

Subsequent to the Northern District of California denying Rockstar's motion to dismiss or transfer, Judge Gilstrap in the Eastern District of Texas denied a motion to stay or transfer the first-filed infringement suit filed by Rockstar to the Northern District of California. *Rockstar Consortium US LP v. Samsung Elec.s Co., Ltd.,* No. 2:13-cv-00894, 2014 WL 2965880 (E.D. Tex. July 1, 2014). However, the Federal Circuit then granted a petition for a writ of mandamus and ordered the Eastern District of Texas to stay the first-filed infringement case pending the outcome of the second-filed declaratory judgment action in the Northern District of California, finding that Judge Gilstrap's refusal to stay the infringement case was an abuse of discretion. *In re Google Inc.,* 588 Fed. Appx. 988 (Fed. Cir. Oct. 9, 2014).

The facts in *Munchkin, Inc. v. FRUminator, Inc.,* are also analogous. No. 4:08CV00367-ERW, 2008 WL 2486042 (E.D. Mo. June 18, 2008). In that case, the defendant FRUminator filed an infringement suit in the Eastern District of Texas. The accused infringer, Munchkin, subsequently filed a declaratory judgment action of non-infringement in the Eastern District of Missouri, and the patentee moved to dismiss or stay the second-filed declaratory judgment action. The court denied the motion because factors of convenience strongly favored the forum of the second-filed declaratory judgment action. The Court found that patentee was incorporated in Missouri, had its principal place of business in the Eastern District of Missouri, and that "the majority of relevant witnesses and evidence is located in the Eastern District of Missouri." *Id.* at *2. The Court concluded that it would be appropriate to continue the second-filed declaratory judgment action and refused to dismiss, transfer, or stay the action. *Id. See also Pacific Coast Bldg. Prod., Inc. v. CertainTeed Gypsum Mfg., Inc.,* No. 4:18-cv-4165, 2019 WL 4046550 at *6 (W.D. Ark. Aug. 27, 2019) (staying first-filed infringement action in favor of second-filed declaratory judgment action in the Northern District of California, finding it was the "more convenient form" where

the plaintiffs were located on the west coast, "many of the potential witnesses in this action reside there," and defendants had previously been sued in the forum); *Metropolitan Life Ins. Co. v. Bancorp Serv., LLC,* No. 4:07-cv-1338, 2007 WL 4404175 at *2 (E.D. Mo. Dec. 17, 2007) (court declined to dismiss, transfer, or stay the second-filed declaratory judgment action before it, in favor of a first-filed patent infringement suit in the Eastern District of Texas, considering in part that the patentee's principal place of business and relevant documents were located in Missouri and the accused infringer did not have a significant presence in Texas).

The convenience and availability of witnesses and other evidence strongly favors the Central District of California. TCT Mobile U.S. has its principal place of business in Irvine, California; to the extent any other TCL-related entities have relevant evidence in the U.S., those witnesses and documents are predominantly here in Orange County; CCE and its parent company, Acacia Research, are currently based in Orange County; and the most relevant third party witnesses and evidence reside with Google, which is also headquartered in California.

### 1. Most or All Relevant Witnesses and Evidence in the U.S. Are Located in this Forum Because TCT Mobile U.S. and CCE/Acacia Are Based in Orange County

TCT Mobile U.S. has its principal place of business at 25 Edelman, Suite 200, Irvine, California. Yeh Decl. (TCT Mobile U.S.) ¶¶ 4, 8. Its employees are knowledgeable of the importation, sale, and marketing of the Accused Products in the United States; product design and customer support for the Accused Products; features of the Accused Products, including the version of Android code and messaging applications included in the Accused Products; and the market for the Accused Products, including customer demand for different features of the Accused Products. *Id.* ¶ 10. Each of these individuals are employed by TCT Mobile U.S. in Orange County, California. *Id.*

TCT Mobile U.S. also has in its possession documents and records concerning the importation, sale, and marketing of the Accused Products in the

United States; product design and customer support for the Accused Products; features of the Accused Products, including the version of Android code and messaging applications included in the Accused Products; and the market for the Accused Products, including customer demand for different features of the Accused Products. *Id.* ¶ 11.  Such documents and records are maintained in Orange County, California.  *Id.*  To the extent that any TCT Mobile U.S. employees or documents are potentially relevant to the Texas litigation or the present action, they would be located in Orange County, California.  *Id.* ¶ 12.

More generally, as to all activities of any TCL-related entities related to marketing, sales, product design, customer support, and customer interactions regarding the accused products, knowledgeable employees and relevant documents would be located in the Central District of California.  *Id.* ¶ 13.

Publicly available records indicate that the officers of CCE are located in Orange County, California.  According to reports available from LexisNexis, most or all the past and present officers of CCE have had their offices in Newport Beach, California, at the same address listed for CCE's parent company, Acacia Research Corporation.  Benson Decl. ¶¶ 2-8.  According to publicly available records, at least 6 of 8 CCE's past or current officers have also been officers of Acacia Research, with offices in Newport Beach and/or Irvine, California.  *Id.*  The current headquarters for Acacia Research Corporation is in Irvine, California.  *Id.*

Although CCE may argue that it is organized in Texas, and perhaps it will say it has some documents there and some past or current employees, the overlapping nature of the past and current officers of CCE with Acacia Research belies any assertion that CCE is a wholly separate Texas-based entity.  For example, the CEO of CCE, Marc W. Booth, is also the VP & Chief Intellectual Property Officer for Acacia Research and publicly available records list his office as being the same as that for Acacia.  Benson Decl. ¶¶ 2-8.  Mr. Booth's LinkedIn page similarly identifies his location as Newport Beach, California.  *Id.* Ex. 14.

Finally, CCE waived any objections to personal jurisdiction or venue in this district by filing a motion to dismiss under Rule 12(b)(3) without raising such objections.  This further confirms that CCE has a regular and established place of business in this district.  Fed. R. Civ. P. Rule 12(h)(1).

### 2.    Google Is the Developer of the Accused Android Code and Its Witnesses and Evidence Are Also Located in California

CCE's infringement contentions are based on Android code developed and supplied by Google.  In its Amended Complaint in the Texas litigation, CCE accuses the "Android Messaging app" in TCL's "Android phones" of allegedly infringing the '923 patent.  TCT Mobile U.S.'s Amended Complaint, D.I. 20, Ex. D ¶¶ 48, 53.  Moreover, CCE's claim chart attached to its Amended Complaint purports to read limitations of claim 1 of the '923 patent on the Android code that is alleged to be on the accused mobile phones.  *Id.* Ex. D at pp. 145-149.

Google is the developer of the Android platform and its relevant witnesses and records are predominantly located in Mountain View, California.  Google has provided sworn testimony in other litigation that:

- Since 2005, Google has principally developed the Android platform at its headquarters in Mountain View, California.
- Google engineers with relevant technical knowledge of the Android platform are predominantly located in Mountain View, California.
- Most significant engineering, sales, and marketing decisions related to Google's Android platform are made in Mountain View, California.
- Google's ongoing development efforts, operations, and records regarding its Android platform are predominantly based in Mountain View, California.
- All or nearly all of the documents related to Google's Android platform are located in Mountain View California, including technical documents related to its Android platform.

Benson Decl. ¶¶ 9-10, Ex. 9-12.

1

2

### 3.    The Two Unrelated Cases Filed in Texas Do Not Outweigh the Many Other Factors That Weigh Strongly Against a Dismissal or Stay of This Action

3

4

5

6

7

CCE has identified 15 prior cases that have been filed in the Eastern District of Texas since June 2013 involving, in part, CCE's assertion of the '923 patent against other unrelated mobile phone manufacturers.  On balance, however, the other cases pending in that jurisdiction do not change the balance of convenience factors that otherwise weigh in favor of this forum.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

The current case against TCL in Texas is assigned to Judge Gilstrap.  However, all 15 prior cases were assigned to <u>other</u> judges in the Eastern District of Texas, and all previous orders and determinations were made by <u>different</u> judges, namely, retired Judge Leonard Davis and Magistrate Judge K. Nicole Mitchell.  Johnson Decl. ¶ 15.  As explained by the court in *Anza Tech., Inc. v. Xilinx, Inc.,* there are no "practical considerations" in transferring a case to a district that had previously entered a claim construction order where it was issued by a different judge than the one presiding over the case.  No. 17-cv-0687-WJM-STV, 2017 WL 4864947, *5 (D. Colo. Oct. 27, 2017).  In that case, as here, "regardless of whether this action remains in this District or is transferred to another district, any court would be capable of reviewing and interpreting [the prior] claim construction order to the extent applicable." *Id.  See also In re Verizon Bus. Network Servs. Inc.,* 635 F.3d 559, 562 (Fed. Cir. 2011) ("The Eastern District of Texas would have to relearn a considerable amount based on the lapse in time between the two suits").  Any "judicial economy" that could have been achieved in the Eastern District of Texas would have needed to happen years ago, with a judge that had previously made rulings on this patent.  Since that is not the case here, this factor is neutral.

25

26

27

The pendency of two other cases in the Eastern District of Texas also does not change the balance of relevant factors.  The defendants in the OnePlus litigation have not yet been served, and since those defendants reside in China and must be

28

served under the Hague Convention—a process that is currently taking a year or longer—it is uncertain whether or when they will be served.  Johnson Decl. ¶ 16.  A motion to dismiss for lack of personal jurisdiction is pending in the other action against HMD Global.  *Id.*  Neither action has advanced, and they may not advance at all, for any number of reasons.  The possibility that Judge Gilstrap may, at some future time (and for the first time), address issues pertaining to the '923 patent in those other two cases, does not override the strong interests of this forum in resolving the litigation between CCE and the TCL entities.

The remaining § 1404 factors are neutral or favor the Central District of California.  The defendants in the Eastern District of Texas action can be added by CCE as counter-defendants to this action, but TCT Mobile U.S. cannot be added to the Texas action, so that factor favors this forum.  CCE chose Texas as its forum, but that choice should be given little weight given that CCE and its parent company, Acacia, are operationally based in Orange County, California, and the Eastern District of Texas has no connection with the parties or this dispute.  The convenience of the parties and ease of access to the evidence strongly favors the Central District of California, as discussed above.  This forum has a much stronger local interest in the controversy than the Eastern District of Texas, which has no interest in the dispute at all, considering that CCE and TCT Mobile U.S. are based in this District and Google is headquartered in California.  This Court and the Eastern District of Texas are equally familiar with patent law, and court congestion does not favor either forum.  *See generally Google,* 2014 WL 1571807 at \*10.

## IV.   DEFENDANTS IN THE TEXAS ACTION WILL MOVE TO DISMISS, STAY OR TRANSFER OF THE TEXAS ACTION

Should this Court deny CCE's motion to dismiss or stay this action, it is not anticipated that the litigation in the Eastern District of Texas will proceed in parallel.  Plaintiffs will meet and confer with CCE about consolidating the actions in this forum.  If necessary, the defendants in the Eastern District of Texas will have

an opportunity to further address the issues of parallel litigation in that forum. Defendants currently have until September 7, 2020, to respond to the Texas Complaint, in exchange for waiving service under the Hague Convention. Defendants intend to move to dismiss under Fed. R. Civ. P. 19 and alternatively, move to stay or transfer that case to this forum. This Court's decision on the pending motion will be considered by Judge Gilstrap when ruling on those motions.

This situation is not usual. When the Court in one of two overlapping actions declines to dismiss or stay the action before it, and transfer is not an option, the decision often shifts to the other forum to resolve the issue of the case pending before it. Thus, in *Munchkin*, where the district court refused to dismiss, stay or transfer a second-filed declaratory judgment action in favor of a first-filed patent infringement action in the Eastern District of Texas, the Court decided to "proceed with this case, and in the event that the Texas court denies the motion to transfer, the Court can further address any issue of parallel litigation at that time." 2008 WL 2486042 at *2. The same approach is warranted here.

## V.   CONCLUSION

The entity importing and selling the accused products in the U.S., TCT Mobile U.S., is a "necessary or desirable party" and has the strongest interest in this dispute, but it cannot be joined to the Texas action. This is the only Court in which all of claims and parties can be resolved in a single case. The balance of convenience factors strongly favors this forum and this Court has the strongest local interests to protect. CCE's motion to dismiss or stay should be denied.

Dated:      July 13, 2020                    ROBERT BENSON
                                             Orrick, Herrington & Sutcliffe LLP


                                             By: /s/ Robert Benson
                                             ROBERT BENSON
                                             Attorney for Plaintiffs
                                             TCT MOBILE U.S. (US) INC. and
                                             HUIZHOU TCL MOBILE
                                             COMMUNICATION CO. LTD